1    **WO**                          NOT FOR PUBLICATION

2

3

4

5

6                 **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    EMPP Incorporated,                        No. CV-14-00946-PHX-JJT

10                          Plaintiff,          **ORDER**

11   v.

12   RoundPoint Mortgage Servicing
     Corporation,
13
                            Defendant.
14

15          At issue are Plaintiff EMPP Inc.'s Motion for Partial Summary Judgment on

16   Liability, Illegality, and an Element of Damages (Doc. 123, Pl.'s MSJ), to which

17   Defendant RoundPoint Mortgage Servicing Corp. filed a Response (Doc. 133, Def.'s

18   Resp.), and Plaintiff filed a Reply (Doc. 142, Pl.'s Reply); Defendant's Motion for

19   Summary Judgment (Doc. 127, Def.'s MSJ), to which Plaintiff filed a Response (Doc.

20   129, Pl.'s Resp.), and Defendant filed a Reply (Doc. 141, Def.'s Reply); and Defendant's

21   Request for Judicial Notice (Doc. 143), to which Plaintiff filed a Response (Doc. 144),

22   and Defendant filed a Reply (Doc. 147). The Court finds these matters appropriate for

23   decision without oral argument. *See* LRCiv 7.2(f).

24   **I.     BACKGROUND**

25          Plaintiff EMPP Inc. offers a product to mortgage borrowers called the Early

26   Mortgage Pay-Off Plan (EMPP). A borrower enrolled in EMPP simply makes an extra

27   monthly payment of principal on the mortgage loan each year. If the borrower succeeds

28   in making the extra payment yearly, the borrower avoids substantial interest over the life

1    of a typical mortgage. Plaintiff offers its product through financial institutions, including

2    loan servicers like Defendant RoundPoint Mortgage Servicing Corp. Borrowers who sign

3    up for EMPP pay a one-time enrollment fee of $295.00 and a $1.50 fee for each payment

4    draft.

5         On July 11, 2013, Plaintiff and Defendant entered into an EMPP Services

6    Agreement with the goal of enabling Plaintiff to solicit Defendant's customers to enroll

7    in EMPP. (Doc. 7-1, EMPP Serv. Agree.) The term of the Agreement was one year with

8    the possibility of renewal, and Defendant granted Plaintiff the exclusive right to solicit

9    Defendant's customers to enroll in EMPP during this term. Under the Agreement,

10   Plaintiff was to "prepare and submit for [Defendant's] approval all materials, including

11   solicitation letters, follow-up solicitation letters, brochures, and maintenance letters

12   (collectively, 'Plan Materials')" to be used for soliciting borrowers to enroll in EMPP.

13   (EMPP Serv. Agree. at 3.) Plaintiff was also responsible for creating and maintaining a

14   website and toll-free number for the Plan. For its part, Defendant was responsible for

15   reviewing and approving the Plan Materials and providing its loan portfolio data to

16   Plaintiff, among other tasks. The parties did not exchange money in entering into the

17   Agreement; instead, Plaintiff would receive $220.00 and Defendant would receive $75.00

18   of each $295.00 enrollment fee received from a borrower, and Plaintiff would receive

19   $1.00 and Defendant would receive $0.50 of each $1.50 draft fee received from a

20   borrower.

21        Around mid-August 2013, Plaintiff sent a draft solicitation letter for Defendant's

22   review and approval. (Doc. 124, Pl.'s Statement of Facts (PSOF) Exs. 9, 10.) Defendant

23   took the draft solicitation letter under review but did not approve it. (PSOF Ex. 10.) Over

24   the course of the next ten months, Defendant delayed implementing any aspects of the

25   Agreement, and Plaintiff and Defendant discussed the possibility of re-setting the term of

26   the Agreement but never amended the Agreement. On May 5, 2014, when Defendant had

27   not completed its tasks under the Agreement, Plaintiff filed its Complaint against

28   Defendant in this action for breach of contract, breach of the implied duty of good faith

1      and fair dealing, and specific performance. (Doc. 1, Compl.) On June 5, 2014, Defendant

2      terminated the Agreement by notifying Plaintiff of its intent not to renew it upon its

3      expiration in July 2014. (PSOF Ex. 33.)

4          Having completed discovery in this matter, the parties have now filed cross-

5      Motions for Summary Judgment.

6      **II.    LEGAL STANDARD**

7          Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

8      appropriate when: (1) the movant shows that there is no genuine dispute as to any

9      material fact; and (2) after viewing the evidence most favorably to the non-moving party,

10     the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*

11     *Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285,

12     1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect

13     the outcome of the suit under governing [substantive] law will properly preclude the

14     entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

15     A "genuine issue" of material fact arises only "if the evidence is such that a reasonable

16     jury could return a verdict for the non-moving party." *Id.*

17         In considering a motion for summary judgment, the court must regard as true the

18     non-moving party's evidence if it is supported by affidavits or other evidentiary material.

19     *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not

20     merely rest on its pleadings; it must produce some significant probative evidence tending

21     to contradict the moving party's allegations, thereby creating a question of material fact.

22     *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative

23     evidence in order to defeat a properly supported motion for summary judgment); *First*

24     *Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

25         "A summary judgment motion cannot be defeated by relying solely on conclusory

26     allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

27     1989). "Summary judgment must be entered 'against a party who fails to make a showing

28     sufficient to establish the existence of an element essential to that party's case, and on

1    which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

2    1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

3    **III.    ANALYSIS**

4    In its Motion for Partial Summary Judgment, Plaintiff first argues that no genuine

5    dispute of fact as to performance of the parties under the Agreement remains and it is

6    entitled to summary judgment regarding Defendant's liability for breach of the

7    Agreement. (Pl.'s MSJ at 4-7.) The Court agrees that no genuine dispute of material fact

8    remains, but the facts demonstrate the opposite: Defendant is not liable for breach of the

9    Agreement. (*See* Def.'s Resp. at 11-15.)

10    The specific terms of the Plan Materials, including the solicitation letter to

11    Defendant's customers, were not part of the Agreement, and the parties do not argue

12    otherwise. Under the Agreement, Defendant had the right to review and approve the Plan

13    Materials, and the Agreement set no deadline for these tasks. The fact that Defendant

14    never approved the draft solicitation letter that Plaintiff provided within the one-year

15    Agreement term was not a breach of at least the explicit terms of the Agreement. And

16    approval of the solicitation letter was an essential step in the process of soliciting

17    Defendant's customers to enroll in the EMPP, so the fact that Defendant did not complete

18    other tasks under the Agreement resulted in insignificant, if any, harm to Plaintiff.

19    Defendant argues that, when it ultimately reviewed the terms of the solicitation

20    letter, it could not approve the letter because of concerns that the letter was unlawfully

21    deceptive to consumers in violation of both North Carolina[1] and federal law. (*See* Def.'s

22    Resp. at 15; Def.'s MSJ at 13-17.) That may be so. The draft solicitation letter does not

23    inform potential customers that a large portion of those enrolling in the EMPP do not stay

24    enrolled long enough to even recoup their initial investment in the Plan. The Consumer

25    Financial Protection Bureau (CFPB) has brought actions against companies selling plans

26    like the EMPP for failing to disclose drop-out or attrition rates in violation of the

27    _____

28    [1] The Agreement provides that North Carolina law governs the construction and enforcement of the Agreement, and the parties do not dispute the application of North Carolina law.

1    Consumer Financial Protection Act, 12 U.S.C. § 5531 (CFPA), and, while no Court has

2    ruled that these failures to disclose violate the CFPA, several of these cases have ended

3    with the parties' stipulation to a Consent Order in which the company agrees that its

4    marketing of EMPP-like plans shall include disclosures regarding attrition and its effects.

5    (*See* Doc. 143, Exs. 1-4.) North Carolina has similar laws prohibiting deceptive practices.

6    *See* N.C. Gen. Stat. § 75-1.1(a).

7         Plaintiff argues that Defendant breached the Agreement if not by violating its

8    explicit terms, then by failing to complete the required tasks to give effect to the

9    Agreement within a reasonable time. In *Fletcher v. Jones*, 333 S.E.2d 731, 734 (N.C.

10   1985), the North Carolina Supreme Court stated that, when a contract lacks a "time is of

11   the essence" clause, the contracting parties have a reasonable time in which to perform

12   their obligations under the contract. The Agreement contained no "time is of the essence"

13   or other clause to indicate urgency, and Defendant points to evidence showing that the

14   parties continually tried to reset the clock on the time in which to perform over the one-

15   year contract term. Plaintiff tries to distinguish *Fletcher* by arguing that it contemplated a

16   real estate transaction in which there is only one "closing," whereas the instant case

17   involves an Agreement requiring performance of a number of obligations on an on-going

18   basis within a set period of time. But, like the closing date in *Fletcher*, this case does

19   involve one action—approval of the solicitation letter—upon which the other actions are

20   predicated and without which the purpose of the Agreement cannot be fulfilled. Plaintiff

21   has produced insufficient evidence and no legal support for the proposition that the

22   reasonable time Defendant had to review and approve the draft solicitation letter had

23   passed.

24        Moreover, the Agreement contains an explicit notice of default provision with

25   which Plaintiff never complied. The Agreement provides:

26

27        Should any Party hereto commit a material breach or default of this
          Agreement (a "Default"), the other Party shall promptly give to the
          defaulting Party written notice specifically describing the Default (a
28        "Default Notice"). The defaulting Party shall have thirty (30) days after
          receipt of a Default Notice to correct or cure such Default (the "Cure

Period"). If after expiration of the Cure Period the defaulting Party has not corrected or cured the Default, then the non-defaulting Party may terminate this Agreement by written notice of termination to the defaulting Party.

(EMPP Serv. Agree. at 2.) Plaintiff argues that it was not required to comply with this provision because it did not want to terminate the Agreement, but rather wanted Defendant to perform its obligations. But the Agreement contains no such condition. The explicit terms of the default provision provide that Plaintiff was required to give to Defendant written notice and an opportunity to cure when it believed Defendant had defaulted. Under North Carolina law, failure to provide a 30-day cure period required by a contract's default provision relieves the allegedly defaulting party of any further obligation to perform under the contract. *Dishner Developers v. Brown*, 549 S.E.2d 904, 906 (N.C. Ct. App. 2001).[2] The evidence thus demonstrates that Defendant did not breach the Agreement at any point during its one-year term, and Defendant terminated the Agreement at the end of that term.

Even if Defendant were liable for breach of the Agreement here—which it is not—damage to Plaintiff would be difficult to ascertain. As for Plaintiff's request for specific performance, the Court could not practically order the parties to agree on the terms of the solicitation letter to Defendant's customers and would certainly not require Defendant to assent to the sending of a potentially illegal solicitation letter. And, as the Court stated above, the purposes of the Agreement cannot be fulfilled if the parties never agree as to the terms of the solicitation letter. As for money damages, aside from the fact that no money exchanged hands between the parties in the execution of the Agreement, any damages to Plaintiff from lost profits are speculative given the uncertain effect of an

---

[2] Citing an unpublished District of Utah case, Plaintiff also argues that the Agreement did not require it to give Defendant notice of default before bringing this lawsuit. (Pl.'s Reply at 3.) First, in that case, the agreement contained an express provision to that effect, which the Agreement here does not contain. Second, and more importantly, the fact that Plaintiff brought this lawsuit without giving notice of default to Defendant does not mean that Plaintiff did not breach the notice of default provision by not informing Defendant of the alleged default and giving Defendant an opportunity to cure. Plaintiff's argument thus has no merit.

1    amended solicitation letter—one that, for example, discloses EMPP attrition or drop-out
2    rates—on EMPP enrollment.

3            In sum, the Agreement between the parties contained neither a deadline for
4    Defendant's review and approval of the draft solicitation letter nor a "time is of the
5    essence" provision, and the evidence shows that the parties made several efforts at
6    resetting the timeframe for the term of the Agreement. Moreover, Plaintiff never
7    informed Defendant of what Plaintiff believed was default or gave Defendant an
8    opportunity to cure, in contravention of the express terms of the Agreement. As a result,
9    Defendant did not breach the Agreement within the one-year Agreement term, and
10   Defendant properly terminated the Agreement at the end of the term. Because the Court
11   finds that Defendant did not breach the Agreement as a matter of law, the Court need not
12   address the other arguments the parties made in their Motions.

13           IT IS THEREFORE ORDERED denying Plaintiff EMPP Inc.'s Motion for Partial
14   Summary Judgment on Liability, Illegality, and an Element of Damages (Doc. 123).

15           IT IS FURTHER ORDERED granting Defendant RoundPoint Mortgage Servicing
16   Corp.'s Motion for Summary Judgment (Doc. 127) with regard to lack of liability.

17           IT IS FURTHER ORDERED granting Defendant's Request for Judicial Notice
18   (Doc. 143).

19           IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment in
20   accordance with this Order and close this case.

21           Dated this 30th day of August, 2016.

22
23   _____
         Honorable John J. Tuchi
24       United States District Judge

25
26
27
28

- 7 -